UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TROY L. LYLE,

        Defendant.
_____/

Case No: 23-cr-20098
Hon. F. Kay Behm
U.S. District Judge

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT (ECF NO. 40)**

## I.   PROCEDURAL HISTORY

This matter is before the court on Defendant Troy Lyle's ("Lyle") Motion to Dismiss Indictment (ECF No. 40). On May 3, 2023, the Government issued a superseding indictment as to Lyle on a single charge: felon in possession of a firearm under 18 U.S.C. § 922(g)(1), commonly referred to as a "felon in possession" law. Lyle filed his motion to dismiss the indictment on March 13, 2024; the Government responded at ECF No. 46. Central to Lyle's motion was the issue of whether § 922(g)(1) was constitutional under the U.S. Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597

1

U.S. 1 (2022). While this motion was pending, the Sixth Circuit considered that question and determined that § 922(g)(1) "is constitutional on its face and as applied to dangerous people." *United States v. Williams*, 113 F.4th 637, 662 (6th Cir. 2024). In light of the Sixth Circuit's holding in *Williams*, the parties submitted supplemental briefing on Lyle's motion. ECF Nos. 62, 65. The court held a hearing on the motion on October 22, 2024, and this opinion follows. For the reasons described below, the court finds that Lyle may lawfully be prohibited from possessing firearms and **DENIES** Defendant's Motion to Dismiss.

## II. FACTUAL BACKGROUND

Defendant Troy Lyle is before the court on a charge of felon in possession and challenges the constitutionality of that charge as applied to him. The Government alleges that in January 2023, police officers observed a car travelling over the speed limit on snowy roads. ECF No. 35, PageID.311. Officers stopped the car and asked the driver and lone occupant, Troy Lyle, to exit the car. *Id.* After one of the officers ran Lyle's name for warrants and found that he had three active arrest warrants for failing to pay child support, Lyle was placed under arrest.

2

When one of the officers went to retrieve Lyle's car keys, he found a semi-automatic pistol in the right exterior pocket of Lyle's jacket. The pistol was loaded with a round in the chamber. Due to his prior felony conviction, Lyle's alleged possession of a handgun violates 18 U.S.C. § 922(g)(1).

Under the Sixth Circuit's decision in *Williams,* Lyle's prior convictions are relevant to his as-applied challenge to § 922(g)(1). Lyle's records reflect the following convictions as an adult:

| Conviction and Year | Year | Disposition | Sentence |
| --- | --- | --- | --- |
| Misdemeanor ordinance violation – Assault and Battery | 2006 | Pled Guilty | 6 months probation |
| Felony Attempt – Carrying Concealed Weapon | 2005 | Pled Guilty | 24 months probation |
| Misdemeanor Attempt Domestic Violence | 2007 | Found Guilty | 16 days |
| Felony delivery/manufacture of controlled substance (heroin) less than 50 grams (additionally charged and pled guilty to felony carrying concealed weapon, felon in possession, felony firearms) | 2012 | Pled Guilty | 2 years |
| Misdemeanor OWI | 2013 | Pled Guilty | 93 days |
| Felony delivery/manufacture of controlled substance (cocaine) less than 50 grams | 2016 | Pled Guilty | 270 days; 2 years probation |

| Conviction and Year | Year | Disposition | Sentence |
|---|---|---|---|
| Felony delivery/manufacture of controlled substance (heroin) less than 50 grams (Hab 2nd) | 2016 | Pled Guilty | Concurrent with above |
| Felony delivery/manufacture of controlled substances (heroin) less than 50 grams (Hab 2nd) | 2016 | Pled Guilty | Concurrent with above |

The Government alleges that it "appears that Lyle continued distributing drugs after 2016." ECF No. 65, PageID.313. Lyle was allegedly arrested with approximately three grams of cocaine base on him – indicating, according to the government, that he continued to distribute narcotics despite his four prior drug trafficking convictions.

### III. STANDARD OF REVIEW

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment codified a pre-existing "individual right." 554 U.S. 570, 579-81, 592 (2008). This right protects the ability to keep, for "lawful purposes," the kinds of weapons in common usage, like those used for self-defense. *Id.* at 625, 627 (quotation omitted). *Heller* cautioned that nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," like § 922(g)(1). *Id.* at 626. Thus, even after *Heller*, many courts of appeals,

4

including the Sixth Circuit, refused to hear as-applied challenges to § 922(g)(1). *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010). The U.S. Supreme Court upended that tradition in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). *Bruen* required the government to show that a regulation's infringement on a particular citizen's Second Amendment right was "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17. The scope of that inquiry remained unclear. *See United States v. Rahimi*, 144 S. Ct. 1889, 1927 n.1 (2024) (Jackson, J., concurring) (collecting cases). The Supreme Court then attempted to clarify *Bruen*'s holding in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). *Rahimi* emphasized that firearm regulations need not have a historical "twin" to be valid. *Id.* at 1898 (quoting *Bruen*, 597 U.S. at 30). Instead, the relevant inquiry is whether the challenged regulation is consistent with the "principles that underpin our regulatory tradition." *Id.*[1] In light of *Bruen* and

---

[1] Still, the exact method of that approach remains unsettled. *Compare Rahimi*, 144 S. Ct. at 1908 (Gorsuch, J., concurring) ("[W]e have expressly rejected arguments that courts should . . . glean from historic exceptions overarching 'policies,' 'purposes,' or 'values' to guide them in future cases"); *with id.* at 1925 (Barrett, J., concurring) (noting that "historical regulations reveal a principle, not a mold"); *and id.* at 1932 (Thomas, J., dissenting) (arguing that a founding-era law "must be 'well-established and representative' to serve as a historical analogue" to a modern regulation).

*Rahimi*, the Sixth Circuit considered whether § 922(g)(1), a federal "felon in possession" law, remained a constitutional mechanism for disarming people in *United States v. Williams*. *See* 113 F.4th 637 (6th Cir. 2024). *Williams* is a published decision in which the court concluded that 18 U.S.C. § 922(g)(1) is constitutional on its face and as applied to "dangerous" people. *Id.* at 663. It also set forth the standard for determining whether a person convicted of a felony is "dangerous" and can be disarmed. "When evaluating a defendant's dangerousness, a court may consider a defendant's entire criminal record," "as well as other judicially noticeable information." *Id.* at 660.

Under the *Williams* framework, criminal convictions can broadly be separated into three categories. The first category encompasses crimes against a person such as murder, rape, assault, and robbery, which speak "directly to whether an individual is dangerous." *Id.* at 658. In this category, the burden of proof to show non-dangerousness is "extremely heavy." *Id.* ("[V]iolent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question."). The second category encompasses crimes like drug trafficking or burglary. "[T]hese crimes put someone's safety at risk,

6

and thus, justify a finding of danger." *Id.* at 659. The Sixth Circuit's analysis of drug trafficking's dangerousness is noted as follows:

> "[D]rug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010). In addition, it often leads to violence. *See, e.g., Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part and concurring in the judgment).

*Id.*

The final category includes crimes like mail fraud or making false statements. Often, such crimes cause no physical harm to another person or the community, and the *Williams* panel indicated that a defendant's burden is low because district courts should generally find that these crimes "don't make a person dangerous." *Id.*[2]

## IV. ANALYSIS

Lyle has eleven convictions which are potentially relevant to the instant motion. Almost 20 years ago, he pleaded guilty to misdemeanor

---

[2] A note on phrasing: this court attempts to use, where possible, language that centers the dangerousness of the crime and acts at issue. Convictions based on crimes which put another person's safety at risk are valid bases for disarming someone under § 922(g)(1). *Williams*, at *40-41. As the Supreme Court put it: "Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *United States v. Rahimi*, 144 S. Ct. 1889, 1902 (2024); *see also United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (holding that the offense of drug trafficking itself poses a danger to the community).

assault and battery (1) and carrying a concealed weapon (2). In 2007, he was found guilty of misdemeanor domestic violence (3). In 2013, he pleaded guilty to operating a vehicle under the influence (4). In 2012 he pleaded guilty to four felony convictions: a drug trafficking charge (manufacture/delivery of a controlled substance), carrying a concealed weapon, felon in possession of a firearm, and felony firearm (5-8), and pleaded guilty to three more separate instances of felony drug trafficking charges in 2016 (9-11).

Under the *Williams* framework, a court should ask: has the defendant been convicted of any felonies for dangerous conduct? If so, Congress can constitutionally disarm them. Although the *Williams* court at times phrased the analysis in terms of "dangerous persons" and whether a person "is dangerous," the analytical framework only asks about the dangerousness of their conduct which resulted in a felony conviction. *See Williams*, 113 F.4th at 662; *id.* at 660 (phrasing the inquiry as "whether a defendant's past convictions are dangerous"). As far as this court can tell, in applying *Williams*' test, no district court in this circuit has explicitly considered any conduct outside a defendant's

8

criminal convictions.  *See, e.g.*, *United States v. Stewart*, No. 3:24 CR 109, 2024 WL 4476109, at *2 (N.D. Ohio Oct. 11, 2024).

Lyle has four drug trafficking felony convictions from 2012 and 2016, all of which fall under *Williams*' second category of presumptively dangerous crimes, and are sufficient to resolve this motion even without reference to his other seven prior convictions.  Drug-trafficking convictions are specifically identified by the Sixth Circuit as those "that inherently pose[] a significant threat of danger[.]"  *Williams*, 113 F.4th at 663.  It is difficult to discern what exactly might be a non-dangerous drug-trafficking conviction if drug trafficking is inherently a dangerous crime.  *See id.* at 659 ("[C]rimes [that] put someone's safety at risk . . . justify a finding of danger.").  But the circumstances of Lyle's multiple felony drug trafficking convictions in 2012 and 2016 for heroin and cocaine are not like those identified by the Sixth Circuit as non-dangerous, such as mail fraud or making false statements.

For example, in the first of his 2016 drug convictions, Lyle was arrested with seven individual baggies of crack cocaine found on his person.  ECF No. 65, PageID.312-13.  In the second, Lyle contacted an undercover police officer and sold the officer $100 worth of heroin

9

(approximately .6 grams) in a McDonald's restroom. *Id.* at 313. In the third, he again contacted an undercover police officer and sold $100 worth of heroin which was in seven knotted plastic baggies. *Id.* His role was not peripheral to the drug trafficking operation; however small it may or may not have been, he was central to the sales. Drug trafficking is a presumptively dangerous felony; it is the defendant's burden to overcome that presumption. Whatever scenario might qualify as a non-dangerous drug trafficking charge, the court does not find it here. Under the totality of the facts, Congress could lawfully disarm Lyle.

## V. CONCLUSION

The court finds that the Defendant Lyle has not rebutted the heavy presumption that his record includes convictions for crimes which posed a danger to others and the community and that § 922(g)(1) may constitutionally be applied to him. Therefore, the court **DENIES** Defendant's Motion to Dismiss his superseding indictment under § 922(g)(1).

Additionally, pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A) court finds that the time from entry of this order to the

currently scheduled trial date of December 3, 2024 are excludable delay, because the ends of justice are served by excluding the time and because serving those ends outweighs the interest of the public and the defendant in a speedy trial. Pursuant to 18 U.S.C. § 3161(h)(7)(B), the court also finds that the failure to grant an extension of time would very likely deny counsel for the defendant and the attorney for the Government the reasonable time necessary for effective preparation before the scheduled trial date.

    **SO ORDERED**.

Date: November 18, 2024          <u>s/F. Kay Behm</u>
                                                 F. Kay Behm
                                                 United States District Judge