UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                                   Case No: 23-cr-20098
             Plaintiff,                    Hon. F. Kay Behm
                                                 U.S. District Judge

v.

TROY L. LYLE,

             Defendant.

_____/

## OPINION AND ORDER ON ACCA ENHANCEMENT

## I.    PROCEDURAL HISTORY

This matter is before the court following a bench trial.  Pursuant to a Rule 11 plea agreement, Troy Lyle pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  As part of the plea agreement, the government reserved "the right to pursue the sentencing enhancement provided by the Armed Career Criminal Act (ACCA)."  (Plea Agreement, ECF No. 92, PageID.470).  A bench trial was held on that matter on October 29, 2025.  (Transcript, ECF No. 100).  The parties subsequently briefed their arguments.  ECF Nos. 102, 104, 108, 109.  This opinion follows.

1

For the reasons described below, the court finds that the ACCA enhancement does not apply to Mr. Lyle.

## II.   STANDARD OF REVIEW

Under the Armed Career Criminal Act (ACCA), there is a penalty enhancement for violations of 18 U.S.C. 922(g), if the defendant "has three previous convictions . . . for . . . a serious drug offense . . . committed on occasions different from one another . . . ."  18 U.S.C. § 924(e).  Lyle has four potentially relevant drug convictions.  ECF No. 92, PageID.471-72.  The parties dispute whether these offenses were "committed on occasions different from one another."  *See* 18 U.S.C. § 924(e).  Under *Erlinger v. United States*, 602 U.S. 821, 835, (2024) a jury must decide whether the offenses were committed on different occasions and must do so "unanimously and beyond a reasonable doubt."  *Id.*  Lyle, however, has waived his right to have a jury determine whether the offenses occurred on different occasions.  ECF No. 92, PageID.471.[1]  This court, as factfinder, must decide whether the

---

[1] *Erlinger* does not mandate that a jury must determine armed career criminal status in all cases, but rather guarantees defendants the right to have a jury decide the same. *See United States v. White*, No. 24-1879, 2024 U.S. App. LEXIS 22288, 2024 WL 4024038, at *2 (3d Cir. Sept. 3, 2024) ("[Defendant's] reliance on [Erlinger] is misplaced: he waived his right to a jury trial and elected a

government has proven beyond a reasonable doubt that the offenses occurred on occasions different from one another.

In *Wooden v. United States*, 595 U.S. 360 (2022), the Supreme Court addressed the meaning of ACCA's occasions clause and held that the word "occasion" should be interpreted using its ordinary meaning. *Id*. at 1069. *Wooden* noted that word occasion "commonly refers to an event, occurrence, happening, or episode." *Id*. *Wooden* provided some examples. "[T]he occasion of a wedding may include a ceremony, cocktail hour, dinner, and dancing. Those activities need not—and often do not—occur simultaneously; yet they nevertheless compose one occasion." *Id*. at 1065. Similarly, a barroom brawl in which a "patron hits first one, then another, and then a third of his fellow drinkers" is all one occasion. The *Wooden* court noted that the inquiry into what constitutes an "occasion" is "multi-factored" and courts should consider "timing," "location" and the "character and relationship of the offenses." "For the most part, applying this approach will be straightforward and intuitive . . . . In many cases, a single factor—especially of time or place—can decisively differentiate occasions." *Id*. at 1071. *Wooden*

---

bench trial, so the District Court properly served as factfinder in all respects.") (internal citations and quotations omitted).

3

noted that other federal circuit courts had applied this approach successfully.  "Courts, for instance, have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'"  *Id.* (citing *United States v. Rideout*, 3 F.3d 32, 35 (2d. Cir., 1993); *United States v. Riddle*, 47 F.3d 460, 462 (1st Cir., 1995)).

In *United States v. Durham*, 151 F.4th 821, 828 n.5 (6th Cir. 2025), the Sixth Circuit further elaborated on the meaning of "occasion" by posing the example of two separate baseball games between the Yankees and the Red Sox—one held on Opening Day and the other in September, but both at Fenway Park.  "No reasonable juror could conclude" that the Opening Day game occurred on the same occasion as the September game, even though they were both baseball games, they occurred at the same ballpark, the games were for the same purpose, and there were other games in between.  *Id.*

*Wooden*'s examples, and much of the case law on the subject, are complicated significantly by the Supreme Court's later decision in *Erlinger v. United States*, 602 U.S. 821 (2024), which said that that the determination of whether a defendant's past offenses were committed

4

on separate occasions must be beyond a reasonable doubt, not the lower preponderance of the evidence standard.  *Erlinger*, 602 U.S. at 825.  The court's role here is difficult in part because many of the Sixth Circuit cases that have applied *Wooden* have been in the context of harmless error review, where the Sixth Circuit has examined whether it was harmless that a judge rather than a jury decided that prior convictions occurred on different occasions.  *United States v. Ballinger*, No. 23-5579, 2025 WL 2653674, at *3 (6th Cir. Sept. 16, 2025) ("This Court has published several recent decisions considering harmless error in the *Erlinger* context."); *see also Durham*, 151 F.4th at 826 (discussing five published cases).  In those cases, the Sixth Circuit's inquiries focused on whether the *Erlinger* error was harmless beyond a reasonable doubt. *United States v. Campbell*, 122 F.4th 624, 630 (6th Cir. 2024) (explaining that *Erlinger* errors are subject to harmless error review). The parties have not directed the court to any case, however, where the Sixth Circuit directly applied the reasonable doubt standard on its own *de novo* factual review.

Proof beyond a reasonable doubt, while a high standard, does not mean proof beyond all possible doubt.  Possible doubts or doubts based

purely on speculation are not reasonable doubts. A reasonable doubt is a doubt based on reason and common sense. It may arise from the evidence, the lack of evidence, or the nature of the evidence. However, proof beyond a reasonable doubt is nonetheless a much higher standard than preponderance of the evidence; it means "proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions" in your own life. *See United States v. Rios*, 830 F.3d 403, 432 (6th Cir. 2016) (quoting the Sixth Circuit Pattern Jury Instructions); *see also Wilson v. United States*, 232 U.S. 563, 570 (1914) (approving instruction that stated "if you are in the frame of mind where, if it was a matter of importance to you in your own affairs, away from here, you would pause and hesitate before acting, then you have a reasonable doubt").

## III. ANALYSIS

Lyle has four offenses relevant to determining whether the ACCA enhancement applies. They occurred on the following dates:

1) **July 28, 2010** – Lyle was later convicted of possession with intent to deliver heroin along with other offenses;

2) **October 6, 2015** – later convicted of possession with intent to deliver cocaine;

3) **March 21, 2016** – later convicted of selling heroin; and

6

4) **April 6, 2016** – later convicted of selling heroin.

Lyle concedes that his first offense – the conviction for heroin delivery in July 2010 – was a serious drug offense and that it constitutes a separate occasion from the other three offenses.  ECF No. 102, PageID.612.  This case turns on whether there are two ACCA-qualifying offenses among the remaining three offenses.  Because ACCA is triggered when there are three predicate offenses, the first set of briefings focused on whether there are at least two separate "occasions" among those three offenses.  And as much of that briefing acknowledged, if the court found that the conviction for the October 2015 offense was a separate occasion from either the March or April 2016 offenses, the court would not need to decide whether Lyle's March 2016 delivery of heroin and his April 2016 delivery of heroin were on different occasions.

However, while this matter was pending, the Sixth Circuit released *United States v. Jackson*, 173 F.4th 282 (6th Cir. 2026), which alerted the court to a potential problem: whether Lyle's 2015 offense for possession of cocaine was in fact a "serious drug offense" for ACCA purposes.  From that, the court ordered supplemental briefing.  The

7

Government's supplemental briefing correctly notes that, if the court finds that Lyle's March 2016 delivery of heroin and his April 2016 delivery of heroin were on different occasions, then it need not opine on whether the 2015 offense was a serious drug offense.  All parties still agree that both the March and April 2016 heroin offenses are "serious drug offenses."

However, the court concludes that there is reasonable doubt as to whether Lyle's March and April 2016 offenses constitute separate "occasions."  And so it must also address the question of whether the 2015 offense is a serious drug offense, and finds that it does not qualify. The ACCA enhancement therefore does not apply to Lyle.  And the court does not decide the question of whether there is reasonable doubt as to whether the 2015 offense constitutes a separate occasion from the 2016 offenses.

### A.    Occasions

In determining whether at least three of the defendant's previous offenses were committed on different occasions, the court may consider a range of circumstances, including:

> (A) whether the offenses were committed close in time or separated by substantial gaps in time or significant intervening events;
>
> (B) whether the locations of the offenses were near to or far from one another; and
>
> (C) the character and relationship of the offenses to one another, such as whether they are similar or intertwined and whether they share a common scheme or purpose.

*See United States v. Kimbrough,* 138 F.4th 473, 476 (6th Cir. 2025).

A single criminal episode does not require that the crimes occurred simultaneously. A single occasion may encompass multiple, temporally distinct activities. No particular lapse of time or distance between offenses automatically separates a single occasion from distinct ones. *See United States v. Cogdill*, 130 F.4th 523, 528 (6th Cir. 2025); Sixth Circuit Pattern Jury Instructions 12.01B.

The third and fourth offenses occurred as follows. On March 21, 2016, acting under Officer VanLente's direction, undercover Officer Scott Teschendorf called Lyle's phone and arranged a purchase of heroin. Teschendorf met Lyle at a McDonald's on Ballenger Highway. ECF No. 100, PageID.545, 584. The two entered the men's restroom, where Teschendorf purchased heroin from Lyle for $100. The officers chose not to arrest Mr. Lyle at that time. Teschendorf testified that this

decision was strategic, explaining that officers do not charge individuals based on informant buys because the objective is to build a stronger case. *Id.* at PageID.592. On April 6, 2016, the same investigative team consisting of Officers VanLente and Teschendorf arranged a second transaction at the same McDonald's location. *Id.* at PageID.586-88. Lyle again sold heroin to Teschendorf in the men's restroom for $100, after which arrest teams moved in and took Mr. Lyle into custody. These two offenses were charged in separate cases with separate charging documents and case numbers, but Lyle pleaded guilty to these and a third offense at the same hearing. ECF No. 104-7.

On a lower standard of proof such as preponderance of the evidence, the court would have had no difficulty concluding that these drug sales, separated by about two weeks, occurred on separate occasions. But the beyond a reasonable doubt standard is necessarily higher, and works differently. While the time factor is certainly a weighty factor here, the court cannot easily cast aside the obvious and material similarities between these transactions: that these were sales of the same drug, to the same undercover officer, under sales initiated in both instances by that officer, conducted in the same bathroom at the

10

same location, in what appears to be an uninterrupted course of conduct under a common scheme, with a common purpose, and within a relatively short period of time.  *See United States v. Cogdill*, 130 F.4th 523, 531 (6th Cir. 2025) ("To be sure, *Wooden* does state that 'a single factor' (like time) '*can* decisively differentiate occasions.'  But it does not go as far as to hold that a day's separation between crimes is dispositive.") (citation omitted, emphasis in original).

To borrow and expand on the oft-used baseball analogy, perhaps it is right that an Opening Day game in spring and a September "series finale" are indisputably separate occasions.  *See United States v. Durham*, 151 F.4th 821, 828 n.5 (6th Cir. 2025).  (Though it is worth noting that *Durham*'s factual scenario actually involved offenses separated not only by time, but also space and involving different parties, so the hypothetical is dicta).  *See id.* at 828 ("the January 27 [2011] burglary occurred more than 15 miles from the houses burglarized in October 2010.  What's more, the offenses involved victims with no apparent connection to each other.").  But accepting the hypothetical on its terms, an entire baseball season would not count as one "occasion."  *Durham*, 151 F.4th at 828 n.5.  How about another

softball question: What about one "postseason," lasting from September to early November – does that count as one occasion? Probably not, but is the matter "beyond a reasonable doubt"? The Eleventh Circuit picked a ballpark figure to say that a month between otherwise identical games is long enough to definitively constitute two occasions. *United States v. Penn*, 63 F.4th 1305, 1318 (11th Cir. 2023) ("Penn's offenses [the sale of cocaine] no more occurred on the same occasion than two baseball games between the same teams at the same stadium one month apart."). That still is slightly off base, though, because here the intervening period is about half that time, of only about two weeks (and *Penn* predated *Erlinger*, so was likely decided on the lower preponderance standard). To take a turn at bat on the hypothetical: If the games at issue were between the Tigers and the Guardians in Comerica Park, each game part of the same three-game summer series, is there really "no reasonable doubt" that those games count as separate occasions, rather than the "series" itself counting as a single "occasion"? Common parlance refers to one "World Series," even if that annual event is made up of individual games, and those games alternate between both teams' home fields (thereby introducing variability in

12

location as well as time).  It does not strike the court as out of left field to say that at least some jurors would express reasonable doubt that one World Series counts as separate occasions.  *See Cogdill*, 130 F.4th at 529 (Moore, J., dissenting) (applying harmless error review: "If just one reasonable juror could find reasonable doubt about whether the offenses were committed on different occasions, there is reasonable doubt about whether the error was harmless . . ."); *Victor v. Nebraska*, 511 U.S. 1, 20 (1994) (stating the Supreme Court has "repeatedly approved" the formulation of reasonable doubt as "a doubt that would cause a reasonable person to hesitate to act.").

The point is that at some point, holding all other variables constant, reasonable doubt outweighs the certainty created by the last remaining variable of time, because "[o]ffenses committed close in time, in an uninterrupted course of conduct," in the same proximity, sharing a "common scheme or purpose," "will often count as part of one occasion[.]" *Wooden*, 595 U.S. at 369; *see also id.* at 386 (Gorsuch, J., concurring) (predicting that reasonable minds would disagree, under the preponderance standard, about "a defendant who sells drugs to the same undercover police officer twice at the same street corner one hour

13

apart"). Here, the variables of location, motive, the parties involved, the manner and means by which the sale was conducted, and the drug sold are all constant. The only difference is that the sales were about two weeks apart (16 days). The question is whether there is a reasonable doubt that difference in time alone is enough to make them separate occasions, or if this could reasonably be considered one uninterrupted course of conduct or one "series" of sales. *See Wooden*, 595 U.S. at 370 (treating a series of "burglaries on a single night[ as] a single uninterrupted course of conduct"); *United States v. Cogdill*, 130 F.4th 523, 530 (6th Cir. 2025) ("on its own, a gap in time between offenses—*even one as long as three months*—does not prove beyond a reasonable doubt how a rational jury, properly instructed under *Wooden* and *Erlinger*, would have resolved the multi-factored occasions inquiry.") (emphasis added); *United States v. Kimbrough*, 138 F.4th 473, 478 (6th Cir. 2025) (vacating an ACCA sentence where the relevant burglary offenses were separated by (at most) nine days, occurred at locations separated by only two miles, involved the same modus operandi, and were not separated by any intervening arrests).

The government urges the court to rely on *United States v. Williams*, 39 F.4th 342 (6th Cir. 2022). *Williams* involved a direct and *de novo* factual review under *Wooden*, rather than harmless error analysis. *Id.* at 344. The predicate offenses in *Williams* were four robberies. All the robberies were charged in the same indictment, all were committed by the same people, all involved robberies of gas stations in the same county, and the robberies occurred on January 15, 2004; January 23, 2004; January 29, 2004; and March 13, 2004. *Id.* After applying *Wooden*, the *Williams* court and found that four robberies occurred on different occasions. *Id.* at 351. The court agrees that *Williams* has some, albeit limited, value to analyzing this case. But the court must also be conscious that *Williams* is another example that predated *Erlinger*. The defendant in *Williams* raised the argument that was later adopted in *Erlinger*, that a jury should decide whether his offenses were separate occasions (but the *Williams* court rejected that argument). *See Williams*, 39 F.4th at 351. The timing of that case and its analysis indicate that *Williams* was decided *not* under the beyond a reasonable doubt standard – which both parties agree the court must apply here – but under the lower preponderance of the

evidence standard. Thus although *Williams* supports the proposition that Lyle's convictions easily clear the preponderance of the evidence standard to find three different occasions, it has little (if anything at all) to say about the higher burden of proof here.

With all this in mind, the court turns to the facts at hand. The court takes into consideration that 16 days is not an insignificant period of time. And it recognizes that courts have "nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart[.]" *Wooden*, 595 U.S. at 370. However, the court again emphasizes that *Wooden*, and many of the cases on which that case relied, necessarily did not account for the "beyond a reasonable doubt" standard later established in *Erlinger*. The pre-*Erlinger* cases that analyze separate occasions had no reason to analyze outcomes under a higher burden of proof, so their conclusions cannot be taken as dispositive of any analysis here. Weighing on the other side of the scale, the court takes into consideration that Lyle's individual heroin sales in the McDonald's bathroom reflect materially identical circumstances in all other respects. The court takes into consideration that law enforcement, not Defendant, initiated both individual sales,

16

and that the Government chose not to intervene between the sales. *See Kimbrough*, 138 F.4th at 478 (deeming it relevant whether the offenses were separated by "intervening arrests"). The court also takes into account that there is no evidence in this case about any other significant intervening events between Lyle's two 2016 heroin sales; the sole evidence of intervening circumstances in this case is the intervening time itself. *See id.* The court takes into consideration that, while the State of Michigan charged Lyle for both of these offenses in separate cases, he pleaded guilty in the same proceeding. ECF No. 104-7; *see Wooden*, 595 U.S. at 370 (finding it relevant that "Georgia law treated the burglaries as integrally connected" and that they were charged together). The court thinks this case closer to an analysis such as that the Sixth Circuit engaged in when facing a three-month gap between methamphetamine offenses in the same location, in *United States v. Cogdill*: "a rational [factfinder] could reasonably conclude that" the defendant "committed his latter two offenses 'during a single criminal episode.'" *See Cogdill*, 130 F.4th at 530; *see also United States v. Kimbrough*, 138 F.4th 473, 478 (6th Cir. 2025) (holding a reasonable jury could conclude there was reasonable doubt whether two burglaries,

17

committed nine days apart, were separate offenses when they (1) took place within close proximity, increasing the likelihood that the burglaries were "components of the same criminal event," (2) shared a similar "character and relationship" such that they "share[d] a common scheme or purpose," and (3) were committed by the same individuals, using the same modus operandi).  While on balance Lyle's two heroin sales appear to constitute two separate occasions, the court maintains a reasonable doubt that these two sales did not share a common scheme and purpose and are not part of a single "uninterrupted course of conduct."  *See Wooden*, 595 U.S. at 370.  On the constitutionally-required higher standard of proof, Lyle is entitled to the benefit of that doubt.

## B.   Serious Drug Offense

So the court turns to whether Lyle's October 2015 offense is a qualifying ACCA offense, and starts with the threshold question of whether it is a serious drug offense in the first place.[2]

---

[2] The plea agreement states that this was a serious drug offense.  ECF No. 92, PageID.472.  But the court never made that finding.  And the Government no longer asks the court to find that it is a serious drug offense.  ECF No. 109, PageID.731.

ACCA defines "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).  Courts use the categorical approach to determine whether a state drug conviction qualifies as a serious drug offense.  *Shular v. United States*, 589 U.S. 154, 160 (2020).  Under that approach, "a state drug offense counts as an ACCA predicate only if the State's definition of the drug in question matches the definition under federal law."  *Brown v. United States*, 602 U.S. 101, 106 (2024) (citation modified).

To determine whether there is a match, ACCA requires "courts to examine the law as it was when the defendant violated it, even if that law is subsequently amended."  *Id.* at 111.  The parties agree that at the time Lyle committed the October 2015 offense, the federal definition of cocaine had been amended just a few weeks earlier, in September 2015, to legalize [123 I]ioflupane and exclude it as a controlled substance. *Brown*, 602 U.S. at 107-08; *United States v. Wilkes*, 133 F.4th 600, 602

n.2 (6th Cir. 2025). Michigan law, however, criminalized [123 I]ioflupane, which is "a radioactive cocaine derivative . . . that is the active pharmaceutical ingredient in a drug used to diagnose patients who are suspected to have Parkinson's disease." *See Brown*, 602 U.S. at 108; *Wilkes*, 133 F.4th at 602. Because [123 I]ioflupane remained illegal in Michigan at the time Lyle committed the cocaine offense, Michigan law criminalized more conduct than federal law at that time. Thus Lyle's conviction for possession of cocaine in October 2016 is not a serious drug offense for ACCA purposes.

The Government's supplemental brief largely dodges the question the court presented to the parties. ECF No. 109, PageID.729-30 ("For the purposes of determining whether Lyle is subject to the ACCA in this case only, the government asks the Court to assume that it is not a serious drug offense."). But to the extent that the Government contests this finding, it cites several nonbinding opinions that come out differently, because (in the Government's view) there is no true mismatch between Michigan law and federal law. In their reading, Michigan incorporates any drug exemptions available under federal law, and Michigan also excludes substances without the potential for

abuse, like [[123] I]ioflupane, from prosecution. ECF No. 109, PageID.730 n.1; *see* Mich. Comp. Laws §§ 333.7229, 333.7227(1). The court agrees with the dissent in *United States v. Jackson*, 173 F.4th 282, 2026 LX 165456 (6th Cir. 2026), that these arguments would fail, had they been directly argued. *See Jackson*, 2026 LX 165456 at *16 (Mathis, J., dissenting). In Michigan, these statutes function only as affirmative defenses; they do not change the elements of the offense. *See People v. Hartuniewicz*, 294 Mich. App. 237, 245 (2011) ("this Court [has] consistently ruled that these exceptions [to the Michigan Controlled Substances Act, including §§ 333.7229, 333.7227(1)] are affirmative defenses, not elements of the underlying offense. . . . [E]xceptions, exemptions, and exclusions from the legal definition of 'controlled substance' are not elements of a controlled substance offense. Rather, they are affirmative defenses that a defendant may present to rebut the state's evidence."); *People v. Dean*, 74 Mich. App. 19, 27 (1977); *see also People v. Baham*, 321 Mich. App. 228, 231 (2017) (per curiam) ("Once the prosecution has presented a prima facie case of manufacturing a controlled substance, the burden shifts to the defendant to present some competent evidence regarding the

applicability of the personal-use exception.  In other words, the personal-use exception functions as an affirmative defense, and the prosecutor is not required to disprove personal use as an element of the offense." (citation modified)).  These defenses have no bearing on the categorical-approach analysis.  *Cf. Smith v. United States*, 568 U.S. 106, 110 (2013) (an affirmative defense definitionally does not negate an element of the crime, but excuses conduct that would otherwise be punishable).

The parties each acknowledged contrary decisions in this district, so the court addresses these briefly.  *See United States v. Floyd*, 22-cr-20586, 2025 U.S. Dist. LEXIS 151395 (E.D. Mich. August 6, 2025) (Ludington, J.) (on appeal); *United States v. Wilson*, 19-cr-20549 (E.D. Mich. May 31, 2024) (Drain, J.); *United States v. Hinds*, 18-cr-20533 (E.D. Mich. Sep. 28, 2022) (Roberts, J.); *United States v Taylor,* No. 20-20449, 2022 U.S. Dist. LEXIS 147261 (E.D. Mich. August 17, 2022) (Borman, J.).  Respectfully, none of these decisions appear to have addressed the argument that exceptions or exemptions are affirmative defenses under Michigan law, and several predated both *Wilkes* and *Brown.*  The Supreme Court has repeatedly instructed courts to "look

22

solely" to the "elements of the offense" when applying the categorical approach, "without inquiring into the specific conduct of this particular offender." *Mathis v. United States,* 579 U.S. 500, 510 (2016). Definitionally, that approach cannot incorporate affirmative defenses that, under Michigan law, are the defendant's burden to address in any individual case. This court agrees with the conclusions reached by Judge Mathis in his dissenting opinion, and adopts that view. As a result, Lyle's 2015 cocaine possession is not a serious drug offense under ACCA.

## IV.   CONCLUSION

Because Lyle's drug conviction for his October 2015 possession of cocaine is not a serious drug offense and because there is reasonable doubt that his March and April 2016 offenses were committed on separate occasions, Lyle does not have the three predicate offenses needed for ACCA to apply.

**SO ORDERED**.

Date: May 29, 2026                           s/F. Kay Behm
                                             F. Kay Behm
                                             United States District Judge

23